AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT

for the
District of Colorado

| | |
|---|---|
| In the Matter of the Search of )<br><br>The premises known and described as 11450 MELODY DRIVE, APARTMENT #B-207 NORTHGLENN, COLORADO 80260 more fully described in Attachment A, attached hereto. | )<br>)<br>)   Case No. 20-sw-1149-SKC<br>)<br>)<br>)<br>) |

## APPLICATION FOR A SEARCH WARRANT

I am a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

located in the _____State and_____ District of _____Colorado_____, there is now concealed *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841(a)(1) | Possession with intent to distribute and Distribution of a Controlled Substance |
| 21 USC § 843(b) | Unlawful use of a communication facility |
| 21 USC § 846 | Conspiracy to possess with intent to distribute and distribution of a controlled substance |
| 18 USC § 1952 | Interstate and foreign travel or transportation in aid of racketeering enterprises |
| 18 USC § 1957 | Engaging in monetary transactions in property derived from specified unlawful activity |
| 18 USC § 922 | Firearms |
| 18 USC § 2 | Aiding and abetting |

The application is based on these facts:

- ☒ Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*s/ Christopher Hodorowicz*
*Applicant's signature*

_____
*Special Agent Christopher Hodorowicz,* DEA
*Printed name and title*

Sworn to before me and:  ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: __09/25/2020__

_____
*Judge's signature*

City and state: __Denver, CO__

_____
S. Kato Crews, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT "A"**
**DESCRIPTION OF PREMISES TO BE SEARCHED**

The SUBJECT PREMISES is located at **11450 Melody Drive Apartment #B-207, Northglenn, CO,** which is further described as an apartment located within a brown-rock, cream, and beige colored multi-story building that has cream colored porches and a letter "B" on the east side of the building on the west side of Melody Dr., and the south side of W. 114th Way.  The SUBJECT PREMISES is located on the second floor of the building, has a green door with light colored trim around the door.  The door faces north and is located near the southwest stairwell of the building.  The knob is silver in color and on the right hand side and "207" is imprinted on a dark placard in the center of the door.





**ATTACHMENT "B"**
**DESCRIPTION OF ITEMS TO BE SEIZED**

**The Court, finding probable cause for seizure pursuant to a search warrant, authorizes the seizure of the following items:**

1. Controlled substances, including, heroin, cocaine, and methamphetamine.

2. Any vessels or other implements used in connection with the production, packaging, weighing, storage, transport, or distribution of such controlled substances.

3. Any substance used to mix into controlled substances in order to create a larger volume. Such substances are commonly referred to as "cut."

4. Books, records, receipts, notes, ledgers and other papers relating to the production, transportation, ordering, purchase or distribution of controlled substances.

5. Books, records, invoices, receipts, records of real estate transactions, bank statements, and related records, certificates of deposits, passbooks, money drafts, letters of credit, money orders, bank drafts, cashier's checks, bank checks, correspondence, safe deposit keys, money wrappers, and other items evidencing the obtaining, secreting, transfer and/or concealment of assets and the obtaining, secreting, transfer, concealment and/or expenditure of money.

6. Cellular telephone(s) and/or portable telephones, pagers, and any electronic communications or electronic images, records or files contained therein.

7. Address and/or telephone books (written or typed by hand as opposed to printed commercially), indices and any papers reflecting names, addresses, telephone numbers, pager numbers, fax numbers and/or telex numbers of co-conspirators, sources of supply, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists.

8. United States currency, money counter/s, precious metals, jewelry and financial instruments, including mortgage notes, stocks, and/or bonds representing drug proceeds.

9. Photographs and digital images, including still photos, negatives, videotapes, films, undeveloped film and the contents therein, slides, in particular, photographs of co-conspirators, of assets and/or controlled substances.

10. Documents or other articles of personal property tending to indicate the ownership of and/or control over the SUBJECT PREMISES including, purchase or lease agreements, keys, correspondence, bills, and mail envelopes.

11. Weapons, firearms, and items used in conjunction with weapons or firearms, including magazines, ammunition and means of carrying or concealment and records or receipts pertaining to weapons, firearms and ammunition.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case Number:

IN THE MATTER OF THE APPLICATION OF THE
UNITED STATES FOR A SEARCH WARRANT FOR
THE PREMISES KNOWN AND DESCRIBED AS:
11450 MELODY DRIVE, APARTMENT #B-207
NORTHGLENN, COLORADO 80260
_____

**AFFIDAVIT IN SUPPORT OF APPLICATION**
_____

**INTRODUCTION**

1. Your affiant is an "investigative or law enforcement officer" within the meaning of Title 18, United States Code, Section 2510(7) and is authorized by law to conduct investigations and make arrests for offenses enumerated in Title 18, United States Code, Section 2516. Your affiant is a "DEA Special Agent Christopher Hodorowicz" within the meaning of Fed.R.Crim.P. 41(a)(2)(C) and can apply for a Search Warrant pursuant to this rule.

2. Your affiant submits this affidavit in connection with an application seeking authorization to search the property known and described as 11450 Melody Drive, APT#B-207 Northglenn, Colorado (hereinafter the "SUBJECT PREMISES" which is described fully in Attachment A) and thereupon to seize evidence of criminal activity described in detail in Attachment B.

**BACKGROUND OF YOUR AFFIANT**

3. I am a DEA Special Agent and have been so employed since April, 2016. I have been assigned to the DEA Denver, Colorado Field Division Office and Enforcement Group 1, since May 2017. I have completed DEA's 18-week Basic Agent

1

Training Course at the DEA Academy in Quantico, Virginia, which included training on surveillance and undercover techniques, tactical operations, confidential source management, probable cause from sources, interview and interrogation, drug identification, drug field testing, clandestine laboratories and hazardous materials, asset forfeiture law, controlled substances law, search and seizure law, drug conspiracy law, electronic surveillance law, money laundering and bulk currency law, and extraterritorial law. During my tenure with DEA, I have assisted in investigations that targeted suppliers, buyers, and couriers of narcotics.  I have also participated in surveillance operations and purchased narcotics while acting in an undercover capacity, both of which have educated me in the methods of operation of drug trafficking organizations.  Prior to my current assignment, I was employed as a sworn Law Enforcement Officer for the Palos Heights Police Department, in Illinois, for approximately seven years, with approximately three-and-a-half of those years assigned to the South Suburban Major Crimes Task Force.

4.      I have spoken with other DEA Special Agents and Task Force Officers about this and other similar cases, and I have spoken with narcotics experts regarding methods of operation utilized by subjects who distribute, manufacture, traffic, and/or sell controlled substances. Furthermore, I receive training on a daily basis working on drug investigations for DEA in the Denver, Colorado Division Office.

5.      The facts in this affidavit come from my personal observations, my training and experience, and information relayed to me by other agents and witnesses. This affidavit is intended to set forth probable cause in support of a search warrant for the SUBJECT PREMISES and does not purport to set forth all of my knowledge regarding this investigation.

2

6.      Your affiant submits this affidavit in connection with an application seeking authorization to search the property known and described as **11450 Melody Drive, Apt #B-207 Northglenn, Colorado (hereinafter the "SUBJECT PREMISES" which is described fully in Attachment A) and thereupon to seize evidence of criminal activity described in detail in Attachment B.**

7.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, your affiant has not included details of every aspect of the investigation to date. Facts not set forth herein are not being relied on in reaching your affiant's conclusion that an Order should be issued. Nor does your affiant request that this Court rely on any facts not set forth herein when determining whether a warrant should issue.

8.      Based on your affiant's training, experience and investigations involving large amounts of heroin, cocaine, methamphetamine, and other controlled substances, your affiant knows that:

a.      Substantial drug traffickers often maintain on hand or have immediate access to large amounts of United States currency in order to maintain their ongoing narcotics business. The sale and distribution of controlled substances requires an inventory that is expensive.  Controlled substance sales often generate large cash proceeds, which lead to currency reporting to Federal authorities. The currency reporting requirements limit the traffickers ability to make unreported cash purchases and convert cash into other monetary instruments;

b.      Illegal drug trafficking has many similarities to legitimate business activities. In general, a business generates business records, business expenses,

generally relate to business purposes, and a related paper trail reflecting the business activities. Dealers in controlled substances often maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, possession, sale and distribution of controlled substances. Controlled substance traffickers frequently or commonly "front" (provide narcotics on consignment) to their clients and sub-distributors. The aforementioned books, records, receipts, notes, ledgers, etc., are maintained frequently where the heroin, methamphetamine, cocaine and/or other controlled substance traffickers have ready access to them;

       c.    It is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their residences, their associates residences, on their property, in their automobiles, in their businesses or in safe deposit boxes at financial institutions for ready access and to conceal them from law enforcement authorities;

       d.    Illegal drug trafficking operates as a black market industry. Persons involved in drug trafficking often conceal in their residences, their associates residences, their automobiles, on their property, associated businesses and safe deposit boxes, caches of drugs, large amounts of currency, financial instruments, jewelry, expensive clothing, furniture and other items of value which are the proceeds of drug transactions and evidence of consequential financial transactions related to obtaining, transferring, secreting, or spending of large sums of money made from engaging in narcotics trafficking activities;

       e.    Drug dealers often keep keys, rental receipts, ownership deeds and

4

certificates, and billing information that indicate where heroin, methamphetamine, cocaine and/or other controlled substances, assets from their dealings, and related documents are secreted in their residences, associates residences, automobiles, businesses, and safe deposit boxes;

      f.      Controlled substance traffickers commonly maintain addresses and/or telephone numbers in books or papers which reflect names, addresses and/or telephone numbers of their associates, customers, sub-distributors, and sources in their trafficking activity;

      g.      Drug traffickers often maintain firearms associated with their drug trafficking activities.  Drug traffickers need to provide their own protection from rival drug traffickers, drug customers and persons interested in robbing cash proceeds and valuable inventories of illegal controlled substances; and

      h.      Illegal drug traffickers often use various communications technologies to further their business activities, including E-Mail, text messaging and voice communications. Computer equipment is sometimes utilized in certain narcotics operations, as are cellular telephones, Blackberry-type communications devices, phone "apps," and telephone answering machines.

      9.      Based on the information obtained to date, your affiant believes that probable cause exists to search the SUBJECT PREMISES and thereupon to seize admissible evidence of violations of the United States Code, including, but not limited to, violations of: Title 21, United States Code, Section 841(a)(1) Possession with Intent to Distribute and Distribution of a Controlled Substance; Title 21, United States Code, Section 843(b) Unlawful Use of a Communication Facility; Title 21, United States Code,

Section 846, Conspiracy to Possess with Intent to Distribute and Distribution of a Controlled Substance; Title 18, United States Code, Section 1952, Interstate and Foreign Travel or Transportation in Aid of Racketeering Enterprises; Title 18, United States Code, Section 1956, Money Laundering; Title 18, United States Code, Section 1957, Engaging In Monetary Transactions In Property Derived From Specified Unlawful Activity; Title 18, United States Code, Section 922, Firearms; and Title 18, United States Code, Section 2, Aiding and Abetting

## BACKGROUND OF INVESTIGATION

10.     By means of a reliable Confidential Source of information (hereafter CS)(that Your Affiant will not disclose at this time) DEA investigators learned that on May 07, 2020, Wendy J. CABRERA-LOPEZ made plans with Javier RAMIREZ (JAVIER) to supply JAVIER with what investigators believe was a sizeable quantity of heroin referred to as a "Churro."

11.     Surveillance determined that JAVIER was residing at 7740 W. 35th Ave. Apartment #115, Wheat Ridge, CO.  Investigators have determined JAVIER's YOB is 1987.

12.     On May 7, 2020, at approximately 6:50PM, SA Chris Hodorowicz established surveillance in the area of Wendy J. CABRERA-LOPEZ's primary residence, located at 6554 W. Iowa Place Lakewood, CO.   Investigators have determined Wendy J. CABRERA-LOPEZ's YOB is 1982.

13.     At approximately 6:57 PM, your affiant observed Wendy J. CABRERA-LOPEZ walk from her residence to her maroon Jeep Patriot, bearing Colorado license plate RRO-581, which was parked on the street in front of the residence.  Your affiant

observed Wendy J. CABRERA-LOPEZ to be carrying what appeared to be a backpack in her right hand as she walked to the Jeep. Your affiant observed Wendy J. CABRERA-LOPEZ place the backpack in the passenger door of the Jeep, prior to leaving the area at approximately 6:58 PM.

14.     The Jeep was followed by investigators to the apartment complex located at 7740 W. 35th Street Wheat Ridge, Colorado. The Jeep was under continuous surveillance and was not observed making any stops during the drive to the apartment.

15.     At approximately 7:11 PM, TFO Charles Nunley observed the Jeep as it arrived at the complex. TFO Nunley watched the Jeep park behind Apartment #115, previously identified as the residence of Javier RAMIREZ, and observed Wendy CABRERA-LOPEZ walk towards the apartment.

16.     At approximately 7:15 PM, TFO Nunley observed Wendy J. CABRERA-LOPEZ exit the walkway of Apartment #115 and walk to the back of the Jeep, carrying a small blue box. TFO Nunley observed Wendy J. CABRERA-LOPEZ manipulating something the TFO could not observe at the back of the Jeep for a few minutes, then remove two weighted garbage bags from the back of the Jeep and place them in the apartment complex's dumpster. TFO Nunley then observed Wendy J. CABRERA-LOPEZ enter the Jeep and leave the area.

17.     After Wendy J. CABRERA-LOPEZ left the area, TFO Nunley removed the two trash bags he had observed her place inside the dumpster. TFO Nunley transported the trash bags to an off-site location where the bags were opened and searched by TFO Nunley and SA Hodorowicz. Inside the garbage bags, TFO Nunley and SA Hodorowicz located various materials for gardening, such as planting pots,

potting soil, and several little boxes that were blue and green in color that were for "Frog Stake Lights".  The investigators did not find anything of apparent evidentiary value in the garbage bags at that time.

18.     At approximately 7:30 PM, your affiant observed the Jeep return to 6554 W. Iowa Place and park.  At approximately 7:34 PM, your affiant observed CABRERA-LOPEZ walk from the Jeep to her residence. Your affiant did not observe CABRERA-LOPEZ to be carrying anything as she walked to the residence.

19.     Investigators interpret the events of May 7, 2020 as Wendy J. CABRERA-LOPEZ delivering a quantity of heroin to JAVIER RAMIREZ.

20.     By means of CS, on May 08, 2020, investigators learned that Wendy J. CABRERA-LOPEZ received a text message from a subject identified only as ENRIQUE LNU (ENRIQUE).

21.     Investigators later learned through surveillance this text message was for the purpose of ENRIQUE coordinating the receipt of approximately half a kilogram of heroin. From CS, investigators learned Wendy J. CABRERA-LOPEZ received a call from an associate of hers named "Aaron" shortly after receiving the text from ENRIQUE. Your affiant knows from this investigation that "Aaron" is Aaron OROZCO-SANDOVAL, the leader of the OROZCO-SANDOVAL heroin Drug Trafficking Organization (DTO).

22.     Aaron, according to information provided by CS, basically told Wendy J. CABRERA-LOPEZ to get with ENRIQUE and to provide ENRIQUE with one "Chorizo," which Wendy J. CABRERA-LOPEZ was then holding on behalf of Aaron.

23.    Shortly after Wendy J. CABRERA-LOPEZ concluded her conversation with Aaron, Wendy CRABERA-LOPEZ followed-up with ENRIQUE, as Aaron had told her to do.

24.    From CS, Investigators learned that Wendy J. CABRERA-LOPEZ and ENRIQUE were discussing ENRIQUE's runner, VICTOR LNU (VICTOR) coming to meet Wendy J. CABRERA-LOPEZ to receive heroin. Investigators also learned from CS that the two were discussing meeting with VICTOR at Costco located at 4000 River Point Parkway, Sheridan, CO

25.    From CS, Investigators learned further that ENRIQUE's runner, VICTOR, was the individual who met with Wendy J. CABRERA-LOPEZ on April 12, 2020, and afterwards performed a series of evasive maneuvers while driving because he spotted DEA investigators following him.

26.    From CS, on May 8, 2020, Investigators learned that Wendy J. CABRERA-LOPEZ was going to park her vehicle in the Costco parking lot, leave the suspected quantity of heroin ("Churizo") under her vehicle's front passenger seat, and leave the vehicle door unlocked so VICTOR could get the heroin from the vehicle.

27.    On May 8, 2020 at approximately 3:20PM, investigators established surveillance on the known residence of Wendy J. CABRERA-LOPEZ, located at 6554 W. Iowa Place.  SA Hodorowicz observed Wendy J. CABRERA-LOPEZ walking around her garage and then place something in the Jeep Patriot bearing Colorado Registration #RRO581. SA Hodorowicz then observed Jennifer CABRERA-LOPEZ walk to the passenger side of the Jeep Patriot and the vehicle departed.

28.     At approximately 3:40PM, Wendy J. CABRERA-LOPEZ and Jennifer CABRERA-LOPEZ arrived at Costco located at 4000 River Point Parkway, Sheridan, CO.  SA Hodorowicz observed Wendy J. CABRERA-LOPEZ manipulating her phone, which appeared to be her taking a picture of her vehicle. Investigators suspect a picture of the Jeep Patriot was sent to someone to help identify the vehicle.  Wendy J. CABRERA-LOPEZ and Jennifer CABRERA-LOPEZ then walked into the Costco store.

29.     At approximately 4:16PM, TFO William Todis observed a gold Mazda bearing Colorado Registration #AZJT12 driving in the area of the Jeep Patriot, then park. TFO Todis then observed a Hispanic male exit the gold Mazda and walk to Wendy J. CABRERA-LOPEZ's vehicle's passenger side. TFO Todis observed the male remove a small blue and green box from the passenger side of Wendy J. CABRERA-LOPEZ's vehicle and then walk back to the gold Mazda. The gold Mazda then departed.

30.     At approximately 4:25PM, SA Hodorowicz observed the gold Mazda re-enter the parking lot of Costco after circling the area. SA Andrew Scott observed the Mazda park approximately 10 spots north of Wendy J. CABRERA-LOPEZ's vehicle. SA Scott then observed the male exit the Mazda and start walking toward Wendy J. CABRERA-LOPEZ's vehicle with something black about the size of a handheld radio. SA Scott observed the subject place the black object under the passenger seat of CABRERA-LOPEZ's vehicle and walk back to his vehicle. SA Scott then observed the male Hispanic depart in the Mazda and observed Wendy J. CABRERA-LOPEZ and Jennifer CABRERA-LOPEZ exit the Costco.

31.     At approximately 4:41PM, Colorado State Patrolman/TFO Justin Richards initiated a traffic stop on the above described gold colored Mazda being driven by the

afore mentioned Hispanic male who had approached CABRERA-LOPEZ's vehicle at Costco, in the right turn lane of Mississippi and S. Sante Fe Drive, Denver, CO. TFO Richards observed the driver (later ID'd as "VICTOR") stop the gold colored Mazda in traffic, flee on foot across S. Santa Fe Drive, and escape.

32.     At approximately 4:43PM, TFO Richards observed the small backpack containing the package described on prior surveillance on the seat of the vehicle and removed it for safekeeping. SA Hodorowicz then assisted TFO Richards re-position the Mazda behind the Breakfast King restaurant located at 1100 S. Santa Fe Drive, Denver, CO.

33.     SA Hodorowicz and TFO Richards then searched the abandoned vehicle and discovered numerous money transfer receipts to Mexico along with other documents. SA Hodorowicz and TFO Richards then further examined the package that was discovered in the Mazda. SA Hodorowicz observed the package inside a small black Calvin Klein backpack. The package was a green and blue box for a solar powered "Frog Stake Light", the same sort of boxes investigators recovered from the trash Wendy CABRERA-LOPEZ threw out near APT #115 on May 7, 2020. SA Hodorowicz looked inside the "Frog Stake Light" box and discovered a large saran-wrapped cylinder shaped object marked "G.2 LX".  SA Jared Delaney then cut the saran wrap package open and tested the contents of the saran-wrapped package, which tested positive for **heroin,** weighing **.67 Kilograms** (gross weight), well over the 18 USC § 841(a)(1) and (b)(1)(B)(i) threshold quantity of 100 grams of a mixture and substance containing a detectable amount of heroin.  SA Hodorowicz secured the vehicle and transported all evidence back to the Denver Field Division for inventory.  SA

Hodorowicz later sent the suspected approximately .67 KG of heroin to the DEA Laboratory for analysis.

34.     From CS, on May 29, Investigators learned that Wendy J. CABRERA-LOPEZ was involved in a conversation with a drug courier located in California.  The drug courier advised that she did not like the way a narcotics transaction Wendy J. CABRERA-LOPEZ had helped to coordinate had occurred.  The courier advised she had to stand outside on the passenger side of her vehicle to take custody of two "bags" of narcotics to place them into her bag.  The courier advised that it was too visible for people to see.  Wendy J. CABRERA-LOPEZ then asked for suggestions from the courier because Wendy J. CABRERA-LOPEZ was going to coordinate a second narcotics transaction.  The courier advised that the narcotics shipment she had received consisted of two big bars, wrapped in duct tape, like to big triangles the size of the distance between the courier's fingers to her elbow.

35.     From CS, Investigators learned of another conversation between Wendy J. CABRERA-LOPEZ and the drug courier which happened on May 29, after the narcotics transaction.  The drug courier said the courier would have to come up with a reason to have unexplained money if the courier was asked.  Wendy J. CABRERA-LOPEZ said she could transfer the drug courier's payment from CABRERA-LOPEZ's account and agreed she'd say whatever the drug courier wanted her to say.  Wendy J. CABRERA-LOPEZ then advised the drug courier that she had already purchased tickets for Thursday (June 4) and was flying into Ontario, California and would meet with the drug courier in order to provide payment.  From CS, Investigators learned that

Wendy J. CABRERA-LOPEZ plans to return to the Denver Metro Area on the evening of Friday June 5, 2020.

36.     From GPS Location on CABRERA-LOPEZ's phone, on June 5 Investigators learned Wendy J. CABRERA-LOPEZ was in the area of Grand Junction, CO on Interstate 70. At that time SA Drew Hatch and members of Two Rivers Drug Enforcement Team (TRIDENT) located a blue Mazda CX-5 SUV with Nevada Registration #391L34 traveling eastbound on Interstate 70.

37.     TFO Charles Nunley and TFO William Todis performed a registration check via law enforcement database and confirmed the vehicle was a rental car from Enterprise Rent-a-Car. TFO Todis then further confirmed that the vehicle was rented by Wendy CABRERA-LOPEZ.

38.     At approximately 6:51PM, the vehicle exited Interstate 70 at Exit #51 to get gas. Members of TRIDENT believed the occupants of the vehicle to be Wendy CABRERA-LOPEZ and Jennifer CABRERA-LOPEZ based on pictures provided to them.

39.     At approximately 7:01PM, the vehicle departed the gas station and continued eastbound on Interstate 70.

40.     At approximately 10:29PM, on June 5, 2020, Colorado State Patrolman/DEA TFO Justin Richards initiated a traffic stop on the blue Mazda on Interstate 70 at exit #256. TFO Richards positively identified the driver of the vehicle as Wendy CABRERA-LOPEZ and the passenger as Jennifer CABRERA-LOPEZ.

41.     During the traffic stop TFO Justin Richards deployed his K-9 Cona, which alerted to the vehicle. A subsequent search of the vehicle produced four black duct

taped packages containing a brown chunky substance which smelled like vinegar, believed to be heroin.

42.    TFO Richards then performed a "ruse" roadside test of the suspect heroin and advised Wendy CABRERA-LOPEZ that the suspect narcotics had tested negative, as requested by SA Hodorowicz.

43.    After advising Wendy CABRERA-LOPEZ that the narcotics had tested negative, but would have to be seized, TFO Richards released both Wendy and Jennifer CABRERA-LOPEZ from the scene. **(Reference Colorado State Patrol #ST200178)**

44.    Investigators then met at the Colorado State Police Academy where TFO Richards turned the four packages, weighing approximately 10.8 Kilograms (Gross Weight) of suspect heroin over to SA Hodorowicz, as witnessed by TFO Todis.

45.    On July 20, 2020, Investigators learned from CS, that Javier RAMIREZ is now using phone number 323-532-3091. Intelligence Analyst Tiffany Pridemore obtained subscriber information that showed 323-532-3091 is registered to Javier RAMIREZ at 1091 N. Gage Avenue, Los Angeles, California.

46.    From CS, on July 20, 2020, Javier RAMIREZ used 323-532-3091 to speak with Aaron OROZCO-SANDOVAL about cutting up drugs and exchanging money.

47.    On July 31, 2020, the Honorable Michael E. Hegarty, United States Magistrate Judge, District of Colorado, authorized investigators to obtain geo-location information for California-based telephone number 323-532-3091, utilized by Javier RAMIREZ. Information obtained in this manner revealed that the telephone was located at **11450 Melody Drive Apartment #B-207, Northglenn, CO**.

48.     On August 21, 2020, SA Dean Wolpert, obtained the "Rent Roll Detail" from the Griffis Blessing Inc., Echo Ridge at North Hills.  The Rent Roll detail for 11450 Melody Drive, Apartment #B-207, Northglenn, CO, showed Sergio Alexander ALVARADO as the registered renter of Apartment #B-207.

49.     From CS, your affiant learned that Sergio Alexander ALVARADO is the brother of Wendy CABRERA-LOPEZ and was renting the apartment for members of the Aaron OROZCO-SANDOVAL DTO.

50.     In late August of 2020, Investigators installed a covert camera in the public accesible hallway of 11450 Melody Drive, Northglenn, CO. After reviewing dozens of hours of surveillance, Investigators have learned that Javier RAMIREZ resides at 11450 Melody Drive Apartment #B-207, Northglenn, CO, with two other Hispanic male subjects.

51.     While reviewing the footage Investigators observed RAMIREZ and the other occupants of the residence entering and leaving the apartment at various times inconsistent with someone working a regularly scheduled job.  Based on this investigation and the observations from the pole camera, investigators infer that RAMIREZ is a narcotics runner.

52.     On September 15, 2020, Investigators received TOLL data from August 20, 2020 to September 07, 2020 and observed 128 contacts between Wendy CABRERA-LOPEZ and Javier RAMIREZ.

53.     Investigators believe that Javier RAMIREZ and Wendy CABRERA-LOPEZ are still active members of the OROZCO-SANDOVAL DTO, and that Javier RAMIREZ's

residence at Apartment #B-207 contains evidence of drug trafficking and money laundering for the OROZCO-SANDOVAL DTO.

## CONCLUSION

54.     Based on the above-described information, your affiant states that there is Probable cause to search **11450 Melody Drive Apartment #B-207, Northglenn, CO,** which is further described as an apartment located within a brown-rock, cream, and beige colored multi-story building that has cream colored porches and a letter "B" on the east side of the building on the west side of Melody Dr., and the south side of W. 114th Way. The SUBJECT PREMISES is located on the second floor of the building, has a green door with light colored trim around the door.  The door faces north and is located near the southwest stairwell of the building.  The knob is silver in color and on the right hand side and "207" is imprinted on a dark placard in the center of the door.  Your affiant states there is probable cause to enter the SUBJECT PREMISES and thereafter to search for and seize items described in detail in Attachment B.

I, Special Agent Christopher Hodorowicz, having signed this affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

Respectfully submitted this <u>25th</u> day of September, 2020.

*s/Christopher Hodorowicz*
Christopher Hodorowicz, Special Agent
Drug Enforcement Administration

Submitted, attested to, and acknowledged before me by reliable electronic means this <u>25th</u> day of <u>September</u>, 2020.

THE HON. S. KATO CREWS
UNITED STATES MAGISTRATE JUDGE

This Affidavit has been reviewed and approved by AUSA Guy Till.